**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

GREGORY HARVEY,

                              Plaintiff,

        v.                                                      No. 09-CV-598
                                                                   (FJS/DRH)

DONALD SAWYER, Executive Director, Central
New York Psychiatric Center; SHADIA HANNA,
Medical Doctor - Psychiatry, Central New York
Psychiatric Center; MINHAJ SIDDIQI, Medical
Doctor - Psychiatry, Central New York
Psychiatric Center; CHERYL MEYERS, Nurse
Practitioner - Psychiatry, Central New York
Psychiatric Center; JIM BARTON, Ward
Coordinator, Central New York Psychiatric
Center; GAIL GOODWIN, Psychiatric Therapist,
Central New York Psychiatric Center; DR.
BROWN, Medical Doctor - Psychiatry, Central
New York Psychiatric Center; SEVERAL OTHER
MEDICAL DOCTORS, Medical Doctors -
Psychiatry, Central New York Psychiatric Center;
BRAD DAVIS, Senior Therapy Assistant, Central
New York Psychiatric Center; and KEN,[1] Senior
Therapy Assistant, Central New York Psychiatric
Center,

                              Defendants.[2]

---

[1] Defendant Ken is also referred to as defendant Paparella.  Defs. Mem. of Law
(Dkt. No. 20-1) at 2-3.

[2] Defendants Brown and "other medical doctors" have neither appeared nor been
served.  Fed. R. Civ. P. 4(m) requires that a complaint be served upon a defendant within
120 days after the complaint is filed or the complaint may be dismissed as to any
unserved defendant without prejudice.  See also N.D.N.Y.L.R. 4.1(b). The complaint here
was filed on May 22, 2009.  Compl.  The summons for Brown was returned unexecuted on
September 8, 2009.  Dkt. No. 17.  No summonses were executed upon the "other medical
doctors."  More than 120 days have passed since either the complaint was filed or the
summons for Brown was issued.  Accordingly, it is recommended that the complaint be
dismissed as to both Brown and the otherwise unidentified "other medical doctors," without
prejudice pursuant to Rule 4(m) and Local Rule 4.1(b).

**APPEARANCES:**                              **OF COUNSEL:**

GREGORY HARVEY
Plaintiff Pro Se
07-A-3479
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

HON. ANDREW M. CUOMO                          ROGER W. KINSEY, ESQ.
Attorney General for the                      Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[3]

Plaintiff pro se Gregory Harvey ("Harvey"), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

U.S.C. § 1983 alleging that eight DOCS employees at the Central New York Psychiatric

Center (CNYPC) violated his constitutional rights under the Eighth and Fourteenth

Amendments.  Compl. (Dkt. No. 1).  Presently pending is the moving defendants'[4] motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 20.  Harvey opposes the motion.  Dkt.

No. 22.  For the following reasons, it is recommended that defendants' motion be granted

and the complaint be dismissed with prejudice.  It is further recommended that the

complaint be dismissed without prejudice as to unserved defendants.

_____

[3]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[4]See note 2 supra.

2

## I. Background

The facts are related herein in the light most favorable to Harvey as the non-moving party.  See Ertman v. United States, 165 F.3d 204, 206 (2d Cir.1999).  All events appear to have occurred while Harvey was admitted to the CNYPC.

Harvey was diagnosed with bipolar disorder and placed on psychotropic medication in 2004 but discontinued its use and attending counseling at the direction of another psychiatrist in December 2007.  Compl. ¶ 6; Dkt. No. 22, ¶ 3.  After his 2004 diagnosis, Harvey was hospitalized for his mental illness on several occasions.  Dkt. No. 22, ¶ 3.  On April 30, 2008, Harvey was admitted to CNYPC for observation.  Dkt. No. 22, ¶ 3.  On May 14, 2008, defendant Sawyer, the Executive Director of the CNYPC, provided certificatio0ns from two other doctors to the Oneida County Court supporting a request that Harvey be involuntarily committed to CNYPC and asserting a diagnosis of paranoid schizophrenia. Compl. ¶ 6; Dkt. No. 22, ¶ 4.  Harvey contends that Sawyer had no evidence that Harvey was a danger to himself or others, and that the other two physicians never examined him. Compl. ¶ 6; Dkt. No. 22, ¶ 4.  Additionally, Harvey contends that defendant Meyers, a psychiatric nurse practitioner, changed his diagnosis from bipolar disorder to paranoid schizophrenia without authority and improperly.  Compl. ¶ 7, Third Cause of Action; Dkt. No. 22, ¶ 6.  The county court ordered Harvey involuntarily committed for sixty days.  Dkt. No. 22, ¶ 4.

On July 17, 2008, Sawyer applied to the Oneida County Court to extend Harvey's commitment.  Compl. ¶ 6; Dkt. No. 22, ¶ 5.  This application was supported by defendants Sawyer, Hanna, Meyers, and Siddiqi, who affirmed that Harvey required medication but

refused it.  Compl. ¶ 7, First, Second & Third Causes of Action.[5]  The court again ordered

Harvey committed for six months.  Dkt. No. 22, ¶ 5; see also In re Retention to a State

Hospital, for the Mentally Ill, in the State Office of Mental Health, Gregory Harvey, No. MH-

08-0815 (N.Y. Sup. Ct. Oneida County July 17, 2008) (hereinafter In re Harvey I)[6].  The

decision indicated that Harvey had requested a hearing subsequent to Sawyer's evaluation

and application for his involuntary retention at CNYPC, the court held that Harvey was

mentally ill, properly suited for commitment and continued treatment at CNYPC, and that

there was no notification served to any friends or family of Harvey's because there were no

known friends or family located in the state.[7]  In re Harvey I (July 17, 2008).  Harvey's

diagnosis remained paranoid schizophrenia.  Dkt. No. 22, ¶ 6.

On August 18, 2008, the county court conducted a hearing regarding Harvey's

involuntary commitment and forced medication.  Dkt. No. 22, ¶ 7.  The court then ordered

---

[5] The documents indicates that Sawyer presented the application and certification to the court along with an evaluation by one of Harvey's treating physicians.  See In re Harvey,(July 17, 2008).  That physician remained unnamed in the documents submitted.

[6] The decision is filed, under seal.

[7] To the extent that Harvey contends his family and friends were improperly notified of his pending hearing, or not notified at all, such contentions are insufficient to support a constitutional violation.  "A violation of state law neither gives [Harvey] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim." Doe v. Conn. Dep't of Child & Youth Servs., 911 F.2d 868, 869 (2d Cir. 1990) (internal quotation marks and citations omitted); see also Patterson v. Coughlin, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . . ."); Rivera v. Wohlrab, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process.") (internal quotation marks and citations omitted).  Accordingly, for this reason, the defendants' motion to dismiss should be granted as to Harvey's claims regarding defendants' compliance with state law procedures.

4

treatment and medication to continue, despite Harvey's objections.  Dkt. No. 22, ¶ 7;

see also In re Application of Donald Sawyer v. Harvey, No. CA2008-002154, RJI 32-08-

0798 (N.Y. Sup. Ct. Oneida County Aug. 18, 2008) (hereinafter In re Harvey II)[8].  The court

received evidence from Sawyer, Meyers, Hanna, and Siddiqi and heard testimony and

arguments from counsel for both Sawyer and Harvey.  Id.  The court held that Harvey

lacked capacity to make reasonable decisions regarding his mental health treatment, that

the proposed course of treatment advanced by defendants was appropriate, and that it was

in Harvey's best interests to pursue that treatment.  Id.  Accordingly, CNYPC staff was given

permission to medicate and retain Harvey involuntarily for up to twelve months.  Id.  Harvey

was thereafter forcibly administered multiple medications for his mental health which he

claimed caused him muscle spasms and high blood pressure.  Dkt. No. 22, ¶ 8.

During Harvey's time in CNYPC, he also claims that he was discriminated against for

declining his medication.  Dkt. No. 22, ¶ 8.  Defendant Barton told Harvey, in front of fifteen

of the staff members, that he could expect to be discriminated against.  Compl. ¶ 7, Fourth

Cause of Action; Dkt. No. 22, ¶ 11.  Moreover, the fact that "98% of the wards staff [wa]s

white [made Harvey] . . . feel[] he was discriminated against racially and for refusing

inadequate medical treatment and medication."  Dkt. No. 22, ¶ 11.  Harvey alleges that ward

staff, particularly defendant Davis, tried to provoke him.  Dkt. No. 22, ¶ 11.  Additionally,

Harvey alleges that defendant Goodwin provided false medical diagnoses, failed to notify

Harvey's family of his hospitalization, and denied him the opportunity to participate in the

recreation program.  Compl. ¶ 7, Fifth Cause of Action; Dkt. No. 22, ¶ 10.  Davis also gave

---

[8] A copy of the decision is filed under seal.

Harvey poor scores regarding his patient development, which precluded Harvey from "enjoy[ing] certain privileges as [an] honor patient[]." Dkt. No. 22, ¶ 11; see also Compl. ¶ 7, Eighth Cause of Action. Such actions were further perpetuated by defendant Paparella, who refused to bestow honor privileges upon Harvey despite the fact that his scores put him within the "honors" range. Dkt. No. 22, ¶ 11; see also Compl ¶ 7, Ninth Cause of Action. This action followed.

## II.  Discussion

Harvey contends that his Eighth Amendment rights were violated when he was involuntarily committed, forcefully medicated, and had his diagnosis changed from bipolar disorder to paranoid schizophrenia. Additionally, Harvey contends that his Fourteenth Amendment rights were violated when he was discriminated against, actions which were both racially motivated and due to his refusal to accept psychiatric medication. Defendants argue that Harvey's claims are (1) barred by issue preclusion doctrines, (2) meritless, (3) protected by the Eleventh Amendment, and (4) subject to qualified immunity.

## A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

**B.  Issue Preclusion**

Under the Full Faith and Credit Clause of the United States Constitution, federal courts must grant state court judgments the same preclusive effects as those given to other courts within the state.  Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (citing Migra v. Warren City Sch. Dist., 465 U.S. 75, 81 (1984)).  "Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  Allen v. McCurry, 449 U.S. 90, 94 (1980).

**1. Res Judicata**

"A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Allen, 449 U.S. at 94 (applying res judicata to a 42 U.S.C. § 1983 action).  Thus, to sustain a claim of res judicata, the defense must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted).  In New York State, the analysis is governed by the transactional approach by which later claims are barred if they "aris[e] out of the same factual grouping as an earlier litigated claim even if the[y are] . . . based on different legal theories or seek[] dissimilar or additional relief."  Burgos, 14 F.3d at 790 (citations omitted).

Res judicata will not apply where the original forum is incapable of providing the relief

8

requested by the plaintiff.  Burgos, 14 F.3d at 790 (citing Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986)).  "Thus, where a plaintiff was precluded from recovering damages in the initial action by formal jurisdiction or statutory barriers, not by plaintiff's choice, a subsequent action for damages will not normally be barred by res judicata even where it arises from the same factual circumstances as the initial action."  Id.  Even if res judicata is inapplicable to a § 1983 action because the state court forum was incapable of awarding the requested relief, it does not preclude the application of collateral estoppel.  See Phifer v. City of New York, 289 F.3d 49, 56 (2d Cir. 2002).

Here, Harvey seeks compensatory and punitive damages from defendants after defendants successfully petitioned the county court to have Harvey deemed incompetent and order involuntary commitment and forced medication.  In the original proceeding, the county court "determined that [Harvey wa]s mentally ill and in need of care and treatment . . . [and] committ[ed Harvey] to a hospital . . . ."  N.Y. Correct. Law §402(5).  Thus, statutorily, the county court was limited in the relief it could order.  This injunctive relief, whether to approve the commitment of Harvey, is distinct from the compensatory damages Harvey now seeks.  The proceeding a month later was also presumably limited by the same statutory provisions.  Accordingly, res judicata is inapplicable in this case because Harvey was not entitled to the same relief he seeks here.

Therefore, defendants' motion is denied on this ground.


## 2. Collateral Estoppel

Collateral estoppel is applicable

> if (1) there has been a final determination on the merits of the issue

9

> sought to be precluded; (2) the party against whom . . . preclusion is
> sought has a full and fair opportunity to contest the decision. . .; and
> (3) the issue sought to be precluded by the earlier suit is the same
> issue involved in the later action.

Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted).  The requirement of a full

and fair opportunity to contest requires that the plaintiff "was fully able to raise the same

factual or legal issues" in the prior litigation as asserted in the present case.  LaFleur v.

Whitman, 300 F.3d 256, 274 (2d Cir. 2002).  This can be determined by evaluating the

presence of "several factors including: the size of the claim, the forum of the prior litigation, .

. . the extent of the litigation, the competence and experience of counsel, the availability of

new evidence, indications of a compromise verdict, differences in the applicable law and

foreseeability of future litigation."  Kulak v. City of New York, 88 F.3d 63, 72 (2d Cir. 1996).

Here, defendants again contend that Harvey's claims are collaterally estopped against

Sawyer, Siddiqi, Hanna, and Brown.  These are the same four defendants that were

involved in the prior two suits, with Sawyer and another treating physician providing the

county court with affidavits in the July 17, 2008 retention proceeding, and Sawyer, Siddiqi,

Hana, and Brown all providing affidavits in the August 18, 2008 proceeding authorizing

involuntary treatment of Harvey.  Both prior proceedings resulted in a final judgement from

the county court.

Moreover, Harvey had a full and fair opportunity to litigate the previous claim.  Harvey

has been involved in two prior proceedings.  In the first, Harvey requested the hearing,

information was presented to the court and a decision was rendered.  It is unclear whether

or not Harvey was represented by counsel during this proceeding, but it is fair to say he was

able to participate in the litigation process.  Additionally, a month later, a second hearing

was conducted.  At that hearing, Harvey had the opportunity to present testimony to rebut the conclusions of the CNYPC staff.  Harvey was also represented by counsel.  There is nothing in the record to indicate that this representation was anything less than competent and effective.  The record does not support, and Harvey does not indicate, that there is new medical information available since the county court decision was rendered.  Also, there has been no change in the law under which Harvey was involuntarily committed or ordered to undergo involuntary treatment.

Finally, the same issues determined in the county court cases are also presently contested in this action.  In the first proceeding seeking Harvey's retention, the county court determined that Harvey (1) was mentally ill, (2) was a proper subject for retention in CNYPC, and (3) would be properly treated by CNYPC.  In the second proceeding, the county court came to similar conclusions determining that (1) Harvey was incompetent to determine his own appropriate course of mental health treatment and (2) the CNYPC staff was entrusted with administering treatment to Harvey because the treatment was appropriate, narrowly tailored, and in Harvey's best interests.  These parallel holdings concluded that (1) Harvey was mentally ill, (2) Harvey was in need of treatment for his own health and safety, (3) Harvey was unable to make appropriate decisions pertaining to his health because he was deemed incompetent, and (4) the authority to make treatment decisions was placed with CNYPC because their course of action was deemed medically appropriate and not unduly burdensome.  Accordingly, the current issues that Harvey asserts regarding the appropriateness of his commitment and forced treatment, the degree to which he is actually suffering from a mental illness, and the appropriateness of the care rendered by the CNYPC defendants were all been determined in the prior proceeding.

Moreover, Harvey's allegations that the affidavits and allegations of Sawyer, Siddiqi, and Hanna were fraudulent are also implicitly precluded by the factual findings of the two different county court Judges presiding over the previous proceedings, who heard all of the testimony and deemed that of the CNYPC staff correct and credible. Therefore, such arguments relating to any due process or Eighth Amendment claims shall be collaterally estopped from further litigation.[9]

Therefore, defendants' motion for summary judgment should be granted on this ground.


### C. Eighth Amendment

The Eighth Amendment provision against cruel and unusual punishment includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). A prisoner advancing an Eighth Amendment claim for denial of medical care must demonstrate deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not

---

[9]See also subsection C and D(2) infra.

averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. Chance, 143 F.3d at 703; see also Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y, 2001) (".Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim."). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable

13

recklessness.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

"Treatment of mental disorders of mentally disturbed inmates is . . . a serious medical need under Estelle."  Guglielmoni v. Alexander, 583 F. Supp. 82, 826 (D. Conn. 1984) (internal quotation marks and citations omitted).  Therefore, Harvey was undoubtedly suffering from a serious medical need, whether from bipolar disorder or paranoid schizophrenia.

However, even liberally construing the complaint, Harvey fails to allege facts sufficient to demonstrate that defendants were deliberately indifferent to his medical needs.  As previously established, any discussion about the reasonableness of the treatment Harvey underwent is collaterally estopped as prior state court proceedings found that Harvey was incapable of making appropriate treatment decisions, that power was vested solely in the hands of CNYPC and the named defendants, and that the defendants' plan of care was appropriate and represented the least restrictive plan of care available.[10]  Therefore, to the extent that Harvey contends defendant Sawyer, Siddiqi and Hanna were deliberately indifferent, such claims are not cognizable.

Furthermore, to the extent that Harvey disagrees with his mental health diagnosis and subsequent treatment regimen, such a disagreement is also insufficient to state an Eighth Amendment Claim.  Chance, 143 F.3d at 703; Sonds, 151 F. Supp. 2d at 312.  All that is

---

[10] Harvey correctly states that competent individuals have the right to make their own health care decisions, and if the patient chooses to forgo treatment, any further administration of medication constitutes a battery.  Cruzan v. Dir., Missouri Dep't of Health, 497 U.S. 261 (1990).  Harvey thus argues that the forced injections of medications resulted in his subjection to a battery.  Dkt. No. 22 ¶ 8.  However, as has already been discussed, Harvey was deemed incompetent to make his own treatment decisions and is collaterally estopped from arguing otherwise.  Therefore, his arguments regarding a battery are meritless.

required is that the medical care is appropriate.  Sonds, 151 F. Supp. 2d at 311.  As has been previously determined by the state court, Harvey received appropriate and adequate care from CNYPC, where all defendants were employed, to the extent that CNYPC was entrusted with making all future health care decisions.  Accordingly, Harvey's contentions are belied by the state court findings.

Accordingly, defendants' motion on this ground should be granted.

### D. Fourteenth Amendment

### 1. Equal Protection[11]

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

[T]he Equal Protection Clause bars the government from selective

---

[11] Harvey asserts that Barton announced to other staff members that Harvey should expect discrimination.  Dkt. No. 22 ¶ 11.  Such a threat, without more, amounts to verbal harassment.  The same holds true for Harvey's contentions that Davis attempted to incite him into an altercation, though one never ensued.  See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1996) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and therefore is not actionable under . . . § 1983.").  Harvey did not assert, nor does the record support, any allegations of physical injury.  Therefore, even viewing the facts in the light most favorable to Harvey, these alleged statements, without more, are insufficient to state a constitutional claim.

> adverse treatment of individuals compared with other similarly
> situated individuals if such selective treatment was based on
> impermissible considerations such as race, religion, intent to inhibit
> or punish the exercise of constitutional rights, or malicious or bad
> faith intent to injure a person.

Vegas v. Artus, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (internal quotation marks and citations omitted).

   In this case, Harvey has failed to establish how he was treated differently than other inmates in involuntary commitment.  Harvey makes a single proffer that he felt discriminated against by the ward staff because they were predominately white.  Dkt. No. 22 ¶ 11.  It is presumed, though not stated, that Harvey is not white.  However, this allegation in no way establishes how Harvey was treated differently than other inmates.  There are no contentions, and the record does not show, that Harvey was treated differently by staff than other inmates due to either his race or his refusal to take medications.  All Harvey offers are conclusory allegations that the staff was white and that he felt discriminated against.  Id.  Those allegations, without more, are insufficient.  See, e.g., John Gil Const., Inc. v. Riverso, 99 F. Supp. 2d 345, 353 (S.D.N.Y. 2000) ("[A]ssertions of selective enforcement and racial animus [that] are wholly conclusory and unaccompanied by any supporting factual allegations . . . are insufficient to state a claim under either the Equal Protection Clause or 42 U.S.C. § 1983.") (citations omitted)[12].

---

   [12] Liberally costruing Harvey's complaint, it appears he has alleged that facility policies were selectively enforced upon him.

> To prevail on a selective enforcement claim based on the Equal
> Protection Clause, a plaintiff must allege that:
>
> (1) the person, compared with others similarly situated, was
> selectively treated; and

The same is true of Harvey's contentions that he was given poor ratings on the patient development system by Davis and Paparella.  Dkt. No. 22, ¶ 11.  Harvey contends that he was given zeros, or precluded from obtaining honor privilege status even when he had the appropriate amount of points to attain such a standing.  Id.  Such contentions fail to identify other inmates that were similarly situated to Harvey and were being treated differently.  All Harvey proffers are conclusory statements that he was discriminated against, with no discussion to other similarly situated individuals who received more favorable treatment.  Thus, such "vague and speculative" allegations, without more, are insufficient.  John Gil Const., Inc. v. Riverso, 99 F. Supp. 2d at 353.

Accordingly, defendants' motion should be granted on this ground.


## 2. Due Process

Liberally construing Harvey's complaint, he alleged a due process violation.  As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a

---

(2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Siao-Pao v. Connelly, 564 F. Supp. 2d 232, 244 (S.D.N.Y. 2008) (citing Giordano v. City of New York, 274 F.3d 740, 750-51 (2d Cir. 2001)).  For the same reasons stated above, Harvey has failed to allege that he was selectively treated differently than any other similarly situated inmates or that such treatment was motivated by any animus. Accordingly, defendants' motion to dismiss should be granted on this ground.

prisoner must satisfy the standard set forth in <u>Sandin v. Conner</u>, 515 U.S. 472,483-84 (1995).  This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Id. at484; <u>Jenkins v. Haubert</u>, 179 F. 3d 19, 28 (2d Cir. 1999); <u>Frazier v. Coughlin</u>, 81 F.3d 313, 317 (2d Cir. 1996).  Transfer to a mental hospital and involuntary administration of psychotropic drugs were both cited to in <u>Sandin</u> as instances of atypical and significant hardships.  <u>Sandin</u>, 515 U.S. at 484 (citations omitted).  This is presumably because while "[a] criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections."  <u>Vitek v. Jones</u>, 445 U.S. 493-94 (1980).  Accordingly, the court in <u>Vitek</u> provided a list of due process protections including:

> A. Written notice to the prisoner that a transfer to a mental hospital is being considered;
>
> B. A hearing, sufficiently after the notice to permit the prisoner to prepare, at which disclosure to the prisoner is made of the evidence being relied upon for the transfer and at which an opportunity to be heard in person and to present documentary evidence is given;
>
> C. An opportunity at the hearing to present testimony of witnesses by the defense and to confront and cross-examine witnesses called by the state, except upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation, or cross-examination;
>
> D. An independent decisionmaker;
>
> E. A written statement by the factfinder as to the evidence relied on and the reasons for transferring the inmate;
>
> F. Availability of legal counsel, furnished by the state, if the inmate is financially unable to furnish his own; and

G. Effective and timely notice of all the foregoing rights.

Id. at 494-95 (citations omitted).

New York state courts determined the legislative intent behind the procedural protections provided in § 402 to "protect an inmate throughout the evaluation process leading to involuntary confinement . . . ."  Harkavy v. Consilvio, 859 N.E.2d 508, 511-12 (N.Y. 2006) superseded by statute, Harkavy v. Consilvio, 870 N.E.2d 128 (N.Y. 2007) (holding that instead of Article 9 of the Mental Hygiene Law, which was deemed procedurally inadequate because it did not comply with the protections provided to inmates in section 402, the newly enacted Article 10 of the Mental Hygiene Law should be used when considering whether sex offenders should be involuntarily confined after their scheduled release from prison).  Specifically, Section 402 requires examination by two physicians, notice of the application to the allegedly mentally ill individual, a hearing if so requested, the right to representation, determination by a judge, and a limit on the duration for which the individual may be committed.  N.Y. Correct. Law § 402.  In this case, there has been no allegation, nor does the record support any inference, that the retention hearing was deficient or that Harvey failed to receive any process afforded by statute.  As  § 402 provides all of the additional safeguards contemplated by the Supreme Court in Vitek, to the extent that Harvey could plead a due process violation, such contentions are without merit.

Similarly, New York state courts have determined that a patient's right to refuse treatment is not absolute and will yield in some situations, such as where "the patient refuses to consent to the administration of antipsychotic drugs, [and] there [is] a judicial determination . . . [that] the patient [does not have] the capacity to make a reasoned

19

decision with respect to proposed treatment . . . the drugs may be administered pursuant to the State's *parens patriae* power."  Rivers v. Katz, 495 N.E.2d 337, 341-44 (N.Y. 1986) (discussing specifically the application of Mental Hygiene Law §33.03 which allows for involuntary medication of individuals).  These hearings, as here, require the subject individual to be afforded counsel, the judge shown clear and convincing evidence of incapacity, production of evidence, and a conclusion by the court taking into account "the patient's best interests, the benefits to be gained from treatment, the adverse side effects . . . and any less intrusive alternative treatments."  Id. at 344.

In Harvey's case, all of these procedural requirements appear to have occurred; therefore, there has been no procedural due process violation.  Project Release v. Prevost, 722 F.2d 960, 971 (2d Cir. 1983) ("[H]aving considered the New York [Mental Hygiene Law] in its entirety, [the Court] . . . conclude[s] that the statute does meet the minimum facial requirements of due process - both substantive and procedural.").  These procedural requirements, of a hearing, representation by counsel, presentation of evidence and a written report of the conclusions of a neutral fact finder, are similar to those required by § 402 and recommended by the court in Vitek.

Accordingly, any contention that Harvey's state court hearing violated his due process rights are without merit and defendants' motion as to such claims should be granted.

## E.  Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any

Foreign State."  U.S. Const. amend. XI.  "[D]espite the limited terms of the Eleventh

Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her]

own State."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing

Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in

the absence of the State's consent or waiver of immunity, a suit against the State or one of

its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465

U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of

the states.  See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

   "Agencies of the state . . . are entitled to assert the state's Eleventh Amendment

immunity where, for practical purposes, the agency is the alter ego of the state and the

state is the real party in interest."  Santiago v. New York State Dep't of Corr. Servs., 945

F.2d 25, 28 n.1 (2d Cir. 1991) (citing Halderman, 465 U.S. at 100).  Psychiatric centers,

such as the one in question, have also been deemed arms of the state and protected by the

Eleventh Amendment.  Aiken v. Nixon, 236 F. Supp. 2d 211, 226-27 (N.D.N.Y. 2002)

(McAvoy, J.), aff'd, 80 Fed .Appx. 146 (2d Cir. Nov. 10, 2003)(dismissing "all claims for

monetary damages against [Capital District Psychiatric Center] and the individual

defendants in their official capacities . . . .").  Accordingly defendants' motion on this ground

as to CNYPC and all individual defendants to the extent sued in their official capacities

should be granted.


## F. Qualified Immunity

   Defendants also contend that they are entitled to qualified immunity.  Qualified immunity

generally protects governmental officials from civil liability "insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken, 236 F.Supp.2d at 229-30.  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights . . . immunity might still be available as a bar to . . . suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights."   Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (citations omitted).  A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  Aiken, 236 F.Supp.2d at 230.

In this case, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Harvey's allegations as true, he has not alleged that defendants violated his constitutional rights.  Accordingly, in the alternative, defendants' motion to dismiss should be granted on this ground.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1. Defendant's motion to dismiss (Dkt. No.20) be **GRANTED** and that the complaint be **DISMISSED WITH PREJUDICE** as to all claims against all defendants except defendants Dr. Brown and "Several Other Medical Doctors"; and

22

2.  The complaint be **DISMISSED WITHOUT PREJUDICE** as to defendants Dr. Brown and "Several Other Medical Doctors."

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  July 22, 2010
        Albany, New York

United States Magistrate Judge